Beatrice Shainswit, J.
This case presents a typical problem in defining the responsibilities and relations between sponsors of co-operative housing ventures, tenant buyers, and suppliers and tradesmen caught in the middle of a dispute not of their making. As is typical in such cases, once the facts are put into focus, the road to justice is clear.
Plaintiff Schlanger, an individual who does electrical contracting repairs for apartment houses, sues for work done at 49 E. 96th Street, Manhattan, in February, 1970. The building had been converted into a co-operative the previous year; the title closing occurred on September 3, 1969. On the same date, the co-operative corporation, 49 E. 96th St. Realty Corp., retained the seller, Argo Corp., as the managing agent. The latter was authorized to make ordinary repairs and alterations, but not exceeding $500 unless authorized by the co-operative corporation, “ except under such circumstances as Agent shall deem an emergency ”.
In February, 1970, one Ludlow, employed by Argo to manage the building at 49 E. 96th Street, ordered plaintiff — who had been doing electrical work for Argo (in connection with this as well as other buildings it owns or manages) for 15 years — (a) to make certain repairs as to the washing machines at 49 E. 96th Street, and (b) to correct a violation placed by the city on the basement and canopy electric wiring. The violation had been placed on January 16, 1970; plaintiff finished the work correcting it on February 20, 1970; and the violation was removed on March 6, 1970.
The violation was extensive; plaintiff testified, without contradiction, that a dangerous condition, presenting a substantial fire hazard, was involved. Because of the size of the job, plaintiff had not been able to estimate the cost of correcting the violation in advance, and had so advised Argo. He submitted a bill, on March 5, 1970, for $1,028.20; the bill for fixing the washing machines was $212 additional. Thereafter he was advised that the board of directors of the co-operative corporation had refused to pay either bill — not because of any question as to their reasonableness or propriety, but solely because the board had not been consulted in advance.
I find that no question arises whatever as to the $212 bill; the managing agent, Argo, clearly had full authority to make *866 repairs under $500. And I likewise find no true question as to the $1,028.20 bill.
I find, on all of the credible evidence, that the agent was warranted in deeming the violation an emergency, with which it could and should deal without advance approval by the co-operative corporation.
Indeed, defendant co-operative, on the trial, presented no material evidence to the contrary. Its position appeared to be a denial, neither of the correctness of the bill, nor of the need for the repairs, nor of the fact that the repairs had been made, nor of the dangerousness of the condition causing the violation. The sole testimony presented by the defendant co-operative appeared to be a claim that the managing agent — the previous owner of the building — should be responsible for the repairs.
I find no basis for this contention. The contract with the agent, as I have indicated, expressly authorized it to have these repairs made. I might note that, as far as plaintiff was concerned, the agent had apparent authority to act as it had always-done in ordering repairs and the co-operative corporation had done nothing to convey any limitation on that authority to plaintiff or any other tradesmen. But I need not dwell on this point, since I find that the agent had actual authority.
In truth, defendant co-operative’s basic argument — and its actual reason for battling this unquestionably legitimate bill— arise from its members’ belief that the seller, i.e. the managing agent, in some way continued to be responsible for repairs under the sales agreement, the co-operative plan. But I find that plan clearly exculpates seller from any such indefinitely continuing responsibility. It very specifically reads: “ There are no existing violations against or affecting the Property and Sponsor will on closing convey title to the premises free of all violations of record * * * The Property (including the apartments) is being sold ‘ as is ’ and there is no obligation on the part of Sponsor to make any repairs or improvements except in connection with violations of record * * * but the
Sponsor will maintain the building up to date of closing in its condition at the date of presentation of this Plan, reasonable wear and tear excepted. ’ ’
There was also testimony, which I credit, that the facilities, including the electric wiring, were carefully inspected by the tenants and their expert representatives, and that the co-operative plan contract itself represents an incorporation of the results of that inspection.
*867 I find that, under this contract, there is no possible basis for defendant co-operative’s position seeking to hold the managing agent responsible in any way. No one questions that this violation was posted, for the first time, some five months after the co-operative plan went into effect. Even if defendant co-operative’s vague insinuations that the violation was based on some pre-existing condition were in some way proven — and I find that no such proof whatsoever was presented — the co-operative plan very clearly gives buyer no claims against seller except for actual violations existing on the date of sale.
All in all, the resistance to plaintiff’s claim was graceless. The co-operative corporation received a singular benefit from plaintiff’s services; it perforce had to cure the violation; and it would be a manifest injustice for it to retain the benefit of plaintiff’s acts without paying the fair and just value thereof.
Judgment for plaintiff against defendant 49 E. 96th St. Realty Corporation in the amount of $1,240.20, plus costs and interest to be computed from March 5,1970. All claims and cross-claims against Henry Moskowitz and Argo Corporation are dismissed. All motions disposed of accordingly.